COMMONWEALTH PUBLIC SERVICE COMPANY *v.* LINDSAY.

## Opinion delivered June 23, 1919.

1. ELECTRICITY—INJURY FROM WIRE—PRESUMPTION.—The fact that a person using the street is injured by contact with a live wire hanging or fallen to the ground, without explanation, is sufficient *prima facie* evidence on the part of the company owning the wire to entitle the plaintiff to go to the jury in an action for damages for the injury.

2. SAME—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—Where plaintiff, in an action for injury from a live wire, testified that he did not know that the electricity was turned on the wire and there was nothing to indicate that such was the case, and he further testified that the wire was lying beside the sidewalk and that he picked it up for the purpose of throwing it out of the way, it was a question for the jury whether he was guilty of contributory negligence, as it cannot be said as matter of law that he was acting officiously in attempting to remove the wire.

3. SAME—INSTRUCTION.—An instruction that "companies supplying electric current are bound to use reasonable care in the construction and maintenance of their lines" was not objectionable as being abstract where there was evidence tending to prove that the defendant had not allowed sufficient clearance between its wires and the limbs of a tree.

4. TRIAL—INSTRUCTIONS.—It is not a sound objection to an instruction that it does not submit all the issues to the jury where other instructions cover the different phases of the case.

5. ELECTRICITY—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.—An instruction that "the plaintiff cannot be charged with contributory negligence unless he voluntarily exposed himself to a known danger" was not objectionable as excluding constructive knowledge where it is apparent from the context that the court did not mean to confine liability to actual knowledge.

6. SAME—LIVE WIRE—INSTRUCTIONS.—Instructions that plaintiff had no right to touch a live wire lying beside the sidewalk, and that he could not recover if he voluntarily touched the wire, were properly refused.

Appeal from Polk Circuit Court; *J. S. Lake,* Judge; affirmed.

### STATEMENT OF FACTS.

Emmett Lindsay by Mary Burk, his mother and next friend, brought this action against the Commonwealth Public Service Company to recover damages for an in-

jury sustained by him in coming in contact with a live electric wire which he alleges the defendant negligently allowed to fall down on the sidewalk in the city of Mena. The defendant company denied negligence on its part and pleaded contributory negligence on the part of Emmet Lindsay.

The material facts as shown by the plaintiff are as follows: The defendant operated an electric light plant in the city of Mena, Arkansas, by means of which it furnished electricity to public and private consumers. As a part of its equipment, it maintained a row of poles on Port Arthur Avenue upon which a wire was strung carrying an electric current of 2,300 volts. The poles on Port Arthur Avenue were set between the concrete part of the sidewalk and the curb. There was a large shade tree between the concrete walk and the curb through which the electric wire was strung. The electric wire was not attached to the tree, but was attached to poles set on each side of the tree for that purpose. The branches of the tree were cut away so that they did not come in contact with the wire at the time it was strung. During a night in August, 1918, there was a hard rainfall accompanied by wind. The storm does not appear to have been so unusual in severity as might not reasonably have been expected to occur. On the night in question the wire was burned off at some point where it passed through the branches of the tree and the loose ends dropped down right on the edge of the concrete part of the sidewalk which was used by pedestrians. Emmett Lindsay was a boy 17 years of age and lived at the home of a Mr. Stratton further up in the city. On the morning after the rain or storm, he got up about 5:30 o'clock and attempted to turn on an electric light. The current was off and the light would not turn on. The plaintiff did not pay any further attention to the matter, but went on with his usual work about the house until about seven o'clock in the morning, when he started down town for the purpose of getting a gallon of gasoline. On his return home he noticed

a wire down right at the edge of the sidewalk. He had the gallon of gasoline in his right hand and reached with his left hand to throw the wire back out of the way. It was a live wire and knocked him unconscious. The wire was the one which had fallen down to the edge of the sidewalk from the tree described above, and carried 2,300 volts of electricity. The plaintiff did not know it was a live wire when he picked it up. He did not see any fire up in the tree and did not know that a limb of the tree was on fire. The accident occurred about three blocks from the power house of the defendant and on the main thoroughfare of the city of Mena. The plaintiff's hand was burned so badly that the thumb and index finger on his left hand had to be amputated. His middle finger on that hand is still crooked. The plaintiff suffered severe pain on account of his injuries. He was asked on cross-examination if he had not climbed the tree and touched the wire up there and had been thus knocked from the tree by coming in contact with the live wire. He answered that he did not, and again stated that he had started to pick up the wire right at the edge of the sidewalk for the purpose of throwing it out of the way when he was injured. He stated that the wire was not on the concrete part of the sidewalk where the people usually walked, but that it was right at the edge of it— between that and the curbing.

On the part of the defendant it was shown that the wire in question had been strung through the tree four or five weeks and was an up-to-date standard gauge wire. One of the employees of the company stated that it had no means between five o'clock in the morning and the time of the accident of ascertaining that the limb of the tree had fallen across the wire; that it had rained most of the night before and that the rain was accompanied by wind; that before the rain there was a clearage of six inches between the limbs of the tree and the wire; that the limb was not liable to come down and touch the wire with that clearance; that a small limb had broken down and fallen on the wire the night before the

accident occurred; that this limb bore the wire down and pressed it against another limb of the tree, and that on account of the rain this caused the electricity to burn both the limb and the wire so that the wire burned in two and fell down on the ground; that the company had before the accident asked permission of the owner of the property to trim off more of the limbs of the tree, but had been denied permission to do so.

It was shown by the defendant that it was safer for the wire to run between the branches of the tree without being fastened to the tree. There was also testimony on the part of the defendant tending to show that the plaintiff had climbed the tree and touched the live wire while up in the tree; that his coming in contact with the live wire caused him to fall out of the tree down on the sidewalk. As above stated the plaintiff denied climbing the tree, and in this statement he is corroborated by a witness who first came to him and said that he found him lying unconscious with one hand closed about the live wire and the other holding the gallon jug of gasoline.

The jury returned a verdict for the plaintiff, and the defendant has appealed.

*James B. McDonough,* for appellant.

1. A directed verdict should have been given for defendant. The evidence does not warrant the application of the doctrine set forth in 89 Ark. 581. The breaking of the wire was due entirely to an accident that reasonable care could not prevent and there was no liability. 1 Thompson on Neg., § 802, and cases cited.

2. The burden of proof was on plaintiff to prove negligence. 122 Ark. 445. He failed to make out a case of liability. As a matter of law there was no liability. 31 L. R. A. 566; 43 W. Va. 661; 39 L. R. A. 499; 9 C. S. 490; Thompson on Neg., § 892.

3. The court erred in giving the instruction on the burden of proof. 89 Ark. 581, and cases *supra.* See also 54 Ark. 209; 57 *Id.* 418; *Ib.* 429; 61 *Id.* 381; 78 *Id.* 426; 57 L. R. A. 624; 31 *Id.* 566; 82 Mich. 293. This case

falls within the rule announced in Thompson on Neg., § 802, and 57 Ark. 429.

4. It was error to give instruction No. 1. It is abstract and misleading and was specifically objected to. There was no evidence of negligence in constructing and maintaining wires. See cases *supra.*

5. It was error to give instruction No. 3. Defendant endeavored to cure its defects by modification of it but the court declined to do so. Regardless, however of the modifications, it does properly submit to the jury the law as to contributory negligence.

6. It was error to give instruction No. 7 (2a). Defendant was not an insurer of safety under the proof. Defendant was only required to use ordinary care. Jaggard on Torts, 863. It also conflicts with Nos. 4 and 5 given for defendant and places on defendant an absolute duty different from that required by law. Kinkead on Torts, § 261; see also cases *supra.*

7. The court erred in refusing defendant's request No. 2. Cases *supra.*

*Norwood & Alley,* for appellee.

1. The doctrine of *"res ipsa loquitur"* applies here. 9 R. C. L. 31; "Electricity" and cases cited; 59 Ark. 215; 89 *Id.* 581. See also 54 Ark. 209; 57 *Id.* 418-429; 61 *Id.* 381. See also 78 *Id.* 426; 94 *Id.* 254; 86 *Id.* 549; 103 *Id.* 64; 31 L. R. A. 566-572; 57 *Id.* 619.

2. The court properly instructed the jury. 78 Ark. 430; 54 *Id.* 212; 54 *Id.* 131; 9 R. C. L., § 14; 61 Ark. 386; 104 *Id.* 227; 81 *Id.* 187; 87 *Id.* 396; 104 *Id.* 196; 66 *Id.* 264; 65 *Id.* 265; 71 *Id.* 398; 72 *Id.* 145; 73 *Id.* 183.

All the instructions should be read together and as a whole there are no errors. 133 *Id.* 206. The judgment is right on the whole case and should be affirmed. Cases *supra.*

HART, J., (after stating the facts). 1. It is earnestly insisted by counsel for the defendant that the court erred in not directing a verdict for the defendant because it was not shown that the defendant was guilty

of negligence and because the undisputed facts show that the plaintiff was guilty of contributory negligence. The circumstances surrounding the injury were proved by the plaintiff. It was shown by the plaintiff that his injury resulted from contact with a live electric wire of the defendant which had fallen down at the edge of the sidewalk of one of the principal streets of the city of Mena over which the plaintiff at the time was walking. This made a *prima facie* case of negligence against the defendant which was not overcome by the evidence adduced in its behalf. *Southwestern Tel. & Tel Co.* v. *Bruce,* 89 Ark. 581; *Jacks* v. *Reeves,* 78 Ark. 426, and *Texarkana Gas & Electric Light Co.* v. *Orr,* 59 Ark. 215. The dangerous character of live electric wires and the consequent peril to which their suspension over public streets expose those who travel the streets or sidewalks, show the justness of the rule, which holds that the injury of a person using the street by contact with a live wire hanging or fallen to the ground, unexplained, affords sufficient *prima facie* evidence of negligence on the part of the company owning the wire to entitle the plaintiff to go to the jury in an action for damages for the injury.

So, too, whether a person coming in contact with a live wire in a highway is himself guilty of negligence is ordinarily a question for the jury to be determined by it under the circumstances of each particular case. It is true the record shows that the plaintiff lived with a family which used electricity and that on the morning in question when he first arose he endeavored to turn on the electric lights and found that the current was off in the house. It was also shown that the boy climbed the tree and came in contact with the live wire while up in the tree; that the end of the wire in the tree was blazing or one of the limbs of the tree was afire from contact with the wire. The plaintiff denied that he had climbed the tree or that there was any fire in the tree at the time he took hold of the live wire to throw it out of the way. He said that he did not know that the elec-

tricity was turned on the wire, and there was nothing to indicate that such was the case. While the wire was not lying on the part of the sidewalk usually traveled, it was lying near the edge of the concrete part of it and the plaintiff said that he reached down and picked it up for the purpose of throwing it out of the way. He was only seventeen years old at the time and there is nothing to show that he ever worked about electricity. Electric light wires are a stealthy and silent danger of great force and capable of instantly killing or severely injuring persons coming in contact with them. Therefore, under the circumstances of this case the court was right in not telling the jury as a matter of law that the plaintiff was guilty of contributory negligence.

2. It is also insisted that the court erred in giving instruction No. 1 to the jury. The instruction is as follows: "You are instructed that companies supplying electric current are bound to use reasonable care in the construction and maintenance of their lines. This care varies with the dangers that will result from negligence on the part of the company. Reasonable care is such care as a reasonable man would use under ordinary circumstances, and, in determining whether such care has been exercised, the jury will take into consideration the location of the lines, whether in thickly or sparsely settled communities, the harmless or dangerous character of the current carried by such lines, and their remoteness or proximity to people who may pass by, and all other circumstances in evidence."

Counsel for the defendant insists that the instruction is extremely abstract and misleading because it contains a general declaration that electric companies are bound to use reasonable care in the construction and maintenance of its lines. He insists that this declaration does not have a specific application to the facts in the case at bar; that there is no negligence unless it be based upon the contention that the defendant had improperly strung its wires through the tree, and that the undisputed evidence on that point showed that there was

sufficient clearance between the limbs and the wire. We can not agree with counsel in this contention. The negligence charged against the company consisted in its failure properly to construct its line and its omission to take the necessary precautions to prevent the wires from falling to the ground and causing injury to persons using the street or sidewalk in case they did fall. It is true according to one of the employees of the defendant there was a clearance of six inches between the wire and the limbs of the tree in dry weather, but this was not sufficient to absolve the company from its duty to properly maintain its wires. It knew that ordinary rain storms would frequently occur and that the rain falling on the trees might cause the limbs to fall down over the wire and thereby cause both the wires and the limb of the tree to burn in two. The necessary result. of this would be to allow the wire carrying 2,300 volts of electricity to fall down on the sidewalk where persons traveling over it would likely come in contact with it. Therefore we do not think the court erred in giving the instruction.

3. It is next claimed that the court erred in giving instruction No. 2, which is as follows: "If you find that the wire in question was under the control and management of the defendant and that the accident would not have happened in the ordinary course of events and if defendant had used due care, then, since the defendant owed a duty to the plaintiff to use care in the management of its lines to avoid injuring him, the burden of proof is on the defendant to prove that the alleged injury was not caused by defendant's negligence."

There was no error in giving this instruction. The undisputed evidence showed that the injury was caused by the plaintiff coming in contact with the live wire of the defendant which had fallen down on the ground at the edge of the sidewalk. This made a *prima facie* case for the plaintiff and placed the burden of proof on the defendant to justify or excuse its negligence. See authorities *supra*.

4. It is claimed by counsel for the defendant that the court erred in giving instruction No. 3. The instruction reads as follows: "You are instructed that the defense of contributory negligence is contingent upon the object of the plaintiff in handling said wire and also upon his knowledge or ignorance of all the elements of danger connected therewith. The plaintiff can not be charged with contributory negligence unless he voluntarily exposed himself to a known danger. If you find from the testimony that a live wire belonging to the defendant company and controlled by the defendant was lying near the walk, as alleged, and that said wire showed no signs of being charged with electricity, and that plaintiff was ignorant of the character of said wire, and that he took hold of said wire merely for the purpose of casting it aside, and was injured thereby, then your verdict will be for the plaintiff upon this issue."

Counsel for the defendant make both general and specific objections to this instruction. He urges that the instruction is faulty because it does not submit to the jury the issue as to whether or not the plaintiff was making an effort prior to the accident to do something with the wire, the wire at the time being in the tree. It is well settled that the court can not submit all the issues to the jury in one instruction. It was the theory of the defendant that the plaintiff saw a flame up in the tree and out of idle curiosity climbed up there for the purpose of investigating the trouble to the wire and while doing so came in contact with the live wire which caused his injury. The court submitted this phase of the case to the jury in an instruction asked by the defendant.

It is also insisted that the instruction is faulty because the wire was not on the sidewalk in a place where the plaintiff or other passersby would reasonably be injured thereby, and that the plaintiff acted unnecessarily or officiously in endeavoring to remove the wire. He claims that under the circumstances the defendant owed the plaintiff no duty. Such a modification to the

instruction would have amounted to a peremptory instruction in favor of the defendant and was not proper. It is true the wire was not actually lying on the concrete part of the sidewalk which is usually used by pedestrians, but it was lying near the edge of it, and the plaintiff could not be said to be as a matter of law acting officiously in attempting to remove the wire.

It is, also, claimed that the instruction is erroneous because it told the jury that the plaintiff can not be charged with contributory negligence unless he voluntarily exposed himself to a known danger. The vice of this part of the instruction is said to be that it absolves the plaintiff from contributory negligence unless the danger was actually known to him, when the instruction should have contained the modification, that the plaintiff could not be charged with contributory negligence unless he exposed himself to a danger known to him or which ought under the circumstances to have been known to him. We do not think this objection is well taken. The word "known" as used in that part of the instruction evidently referred to the fact of both actual and constructive knowledge of danger on the part of the plaintiff. This is shown by the context. It will be observed that before the plaintiff could recover, under the concluding part of the instruction the jury must find that the plaintiff was ignorant of the character of said wire. This refers to actual knowledge of the danger on his part. Just before that we find the following: "That said wire showed no sign of being charged with electricity." This refers to constructive knowledge on the part of the plaintiff. Before he could recover the plaintiff was required to show, not only that he did not know of the danger, but that he had no reason to believe the wire to be charged with electricity. If the court intended to use the word "known" to mean actual knowledge, as contended by counsel for the defendant, there would have been no use in telling the jury that it must also find that said wire showed no signs of being charged with electricity before he could recover. If he had to have

actual knowledge it would not be any defense that the facts were such that he had reason to believe that the wire was charged with electricity and consequently in the exercise of ordinary care ought to have known that it was so charged and was therefore dangerous to touch. Hence a majority of the court does not think that the court meant to restrict the meaning of the word "known" to actual knowledge, and we do not think there was any error in giving the instruction.

5. It is next insisted that the court erred in refusing to instruct the jury that plaintiff had no right to touch the wire unless it interfered with his passage along the street. The court did not err in refusing to so instruct the jury. This would have been equivalent to the trial court ruling, as a matter of law, upon a question of fact. So, too, in regard to the request of the defendant to instruct the jury that if plaintiff voluntarily touched the live wire then there could be no recovery. Such an instruction would have been an attempt to limit the traveler along the street to an extent not warranted by the decisions.

6. Counsel for the defendant filed a reply brief in which he assigned as error the action of the court in several respects not argued in his original brief. This is contrary to the rules of the court and for that reason these assignments of error can not be considered by us. The rule has been uniformly enforced and no excuse has been given by counsel for not enforcing it in the present case. If counsel should omit to argue any assignment of error in his original brief, such assignment must be treated as waived or abandoned by him unless permission to amend his brief is asked and granted by the court for good cause before the case is submitted. We find no prejudicial error in the record and the judgment must be affirmed.

McCULLOCH, C. J., and SMITH, J., dissent.