PRICE *v*. PRICE.

4-9171                                      228 S. W. 2d 478

Opinion delivered April 3, 1950.

Reuben Chenowith, for appellant.

Reece Caudle and Richard Mobley, for appellee.

ED. F. McFADDIN, Justice. The Chancery Court granted the wife a divorce and also made a division of the real property. The husband challenges the decree.

I. *Sufficiency of the Evidence as to Grounds of Divorce.* Mrs. Price (plaintiff below) said that her husband had frequently slapped and otherwise mistreated her during the twenty-five years of their married life. Of Mr. Price's acts which caused her to leave him and sue for divorce, she testified:

" . . . He had his fist drawn back and he hit me in the face and bruised my eye and knocked me on the floor. I couldn't get up. I just lay there and the first thing I knew he was picking me up, and helped me to the bed. I don't know what happened while I was down on the floor. I didn't know anything. . . . When I started out he told me he didn't mean to hurt my eye; and I told him I was hurt awfully bad, and that my eye was nothing like the spot inside my breast; and I had a bruise over my breast, and on my back and my arm. I had bad bruises all over my body."

The twenty year old daughter of the parties testified: that when she entered the room in which the altercation occurred, her mother and father were alone; that her mother's eye was "swollen almost together"; that her mother was sitting on the bed; and that when the daughter remonstrated with the father, "he said he didn't hit her with his fist, that he just slapped her." The testimony also shows that Mrs. Price went immediately to the home of her mother and sister; and they testified as to the extent of her injuries and bruises.

While Mr. Price denied striking his wife, he did not deny his daughter's testimony; and his offer made in open court—that he would treat his wife as she should be treated if she would return to him—implies an admission of wrongdoing, and a plea for forgiveness. The

Chancellor delayed, for some time, the entry of a decree; but when he found there was no prospect for a reconciliation, and that Mrs. Price entertained fear for her welfare if she returned to Mr. Price, then the decree was granted. We hold it was correctly granted. (See *Lupton* v. *Lupton*, 210 Ark. 140, 194 S. W. 2d 686.)

II. *Division of the Property.* Three parcels of real property are involved:

(a)—The ''Dover Cafe'' property (part of two lots in the town of Dover) in which the Chancellor awarded the wife one-half interest in fee;

(b)—The ''Gravel Hill'' property (121 acres) in which the Chancellor awarded the wife one-third interest in fee; and

(c)—The ''Home Place''[1] (75 acres) in which the Chancellor decreed the parties to be tenants in common in one portion, and the wife to have one-third estate for life in the other portion.

The husband claims that the wife is usually entitled to only one-third life estate in the realty (see § 34-1214 Ark. Stats. 1947); and the wife, by cross-appeal, claims one-half interest in fee in all the property; and also asks a reasonable attorney's fee.

It is clearly shown that Mrs. Price's wages went into a joint bank account; and that from such account there were paid—directly or indirectly—the considerations for the ''Dover Cafe'' property and the ''Gravel Hill'' property. The record is replete with deposit slips, bank statements, and earning reports, showing the source of funds that augmented the joint account. It is unnecessary to detail all of these, but, from a careful study of the record, we reach the following conclusions:

(a)—We affirm the decree of the Chancery Court awarding the wife one-half interest in fee in the ''Dover Cafe'' property. When Mr. and Mrs. Price purchased the cafe, they did so on an equal basis; and her energy

---

[1] The parties did not live on the property and no homestead rights are involved. They merely used such designation for convenient reference.

and efforts were responsible for the success of the business and the profits that it made. (See *Williams* v. *Williams,* 186 Ark. 160, 52 S. W. 2d 971.)

(b)—In the "Gravel Hill" property, we award Mrs. Price an undivided one-half interest in fee. It was shown that in 1948 the Prices took a mortgage, in their joint names, on 80 acres of this property. Later the owner transferred the entire 121 acres in satisfaction of the previous mortgage and for an automobile which had been purchased indirectly with funds from the joint account. So as to the "Gravel Hill" property, Mr. and Mrs. Price are tenants in common,[2] each owning one-half undivided interest.

(c)—As to the "Home Place," the Court found that the title to this property was acquired by two different transactions. There was one deed (called "the Brewer deed") made in 1930, to an undivided interest, and another deed made in 1943 to an undivided interest. In his brief appellant does not contend that the Chancery decree was in error as to this property, so we affirm the decree of the Chancery Court regarding the "Home Place."

III. *Attorney's Fee.* On her cross-appeal, Mrs. Price asked for attorney's fee, but we decide against such allowance. The record reflects that in May, 1948, at a time when the parties were separated and before the October events that led to this divorce action, Mrs. Price withdrew from the joint bank account the sum of $325 for her own use. Here is the testimony:

"Q. What is this $325 check shown on the bank statement from the Peoples Exchange Bank?

"A. I put that in the Bank of Russellville in my name.

---

[2] It will be noticed that Mr. and Mrs. Price acquired the title to the "Gravel Hill" property in 1948, which was after the effective date of Act 340 of 1947, as found in § 34-1215, Ark. Stats. 1947. This statute is not cited in the briefs, but we point out that even if the title had been by entirety to this property, nevertheless the Chancery Court in this case had power to decree the husband and wife to be tenants in common, since the property was acquired *after* the effective date of Act 340 of 1947. We are not called on, at this time, to determine the effect of the 1947 Act on entirety titles created before its enactment. (See 1 Arkansas Law Review 220.)

"Q. And that closed out the account?

"A. Yes."

The appropriation of this money by Mrs. Price constitutes a sufficient sum which she can use to pay the attorney's fee.

### CONCLUSION

We affirm the Chancery Court in all respects, except to increase Mrs. Price's interest in the "Gravel Hill" property from one-third fee, as awarded, to one-half fee as now determined; and we adjudge the costs of all Courts against Mr. Price.